ShaceeleoRD, J.,
delivered the opinion of the Court.
This bill and cross bill, was filed in the Chancery Court of DeKalb. It appears from the facts stated in the original bill, Daniel Smith, on the 11th of December, 1847, executed and delivered a deed of gift to the complainant, as follows: “For the love and affection I bear my sister, Sarah Irwin, I do hereby give, transfer and convey, during her life, for her use and benefit, a certain negro woman named Lucy,' about twenty-two. years old, and her four children, to-wit: Frank, Jim, Berry and Henry, and the increase, if any more; and at the death of my said sister, said slaves to be equally divided between the children she now has, or may hereafter have. I only intend the use of said slaves for said Sarah during her natural life, and after her death to be equally divided between her children,” etc., etc. The deed was properly registered. It does not appear from the proof, whether Irwin, the husband, was living at the execution of the deed. He died about the time of its execution. An administrator was appointed on his estate. The slaves remained in the possession of the widow several years, and she intermarried with defendant, Isaac *503 Chrisman, by whom she had several children. More than three years elapsed after the. marriage with Ohris-man — the parties became dissatisfied with the slaves, sold them to the original donor, Smith, taking in exchange two tracts of land — one tract of four hundred and fifty acres, and one tract of two hundred acres, and some money, amounting to about $300. Smith had an entry for the two hundred acres and caused a grant to issue from the State to .complainant and children, for the sole use of the heirs of her body, to the said tract. The parties becoming dissatisfied, the slaves were returned to complainants, except the negroes Frank, Berry and Polk, which defendant, Daniel Smith, had sold beyond the limits of the State.
The negro woman Lucy, and the increase, were levied upon by the creditors of Isaac ^Chrisman, and this Mil is filed by the complainant and her children, to enjoin the sale, and to secure the interest in remainder to the children of the deceased husba'nd, and to settle the life estate on her, free from the debts and contracts of her husband. Smith answered, and admitted he had sold the three slaves, and was unable to return them — insisted he had, in the conveyance of the land, given valuable consideration — admits the bond for title to the four hundred acres was given to the husband, Isaac Chrisman, and that he had assigned the same — that the object and purpose was to secure the land tb the children of Sarah.
A decree was rendered in the Court below, directing a sale of the life estate in a part of the slaves, securing the remainder interest to the children of *504 Sarah, and directing that Smith return the slaves, Frank, Berry, and Polk, on or before the next term of the Court, or he he charged with the highest market value. On the hearing, and before the rise of the Court, Smith filed his cross bill, asking for a rehearing; that the complainant be compelled to account for the value of the lands, etc. The Chancellor refused the re-hearing, but granted the privilege of filing the cross bill. From the decree of the Chancellor, and refusal to grant a re-hearing, Smith has appealed to this Court. Other decrees were rendered in this cause, allowing the claims of the creditors of Chris-man, and directing a sale of the life estate of complainant, Sarah, in the negro woman, Lucy, and her children, which was done, and the debts collected. The record has been filed for error by the complainant, Sarah.
It is insisted, for the complainant, Sarah, that the deed of the 18th of August, 1847, to her and he: children, vested a separate estate in her for life, aid remainder to her children, before her intermarriage with Chrisman. His marital rights did not attach; eonse-quently, the negro woman, Lucy, and her increase, were not the subjects of levy and sale, at the suit of the creditors of the husband. This question has been frequently before this Court, and the principle is too well settled to be disturbed; unless the intention clearly appears from the instrument by which the party holds the right of the property, the object and intention of the maker was to exclude the marital rights of the husband, they would attach. The language of the deed is: “For her *505 use and benefit, I give and transfer,” etc.; and “I intend said slaves for the use of said Sarah.”
Upon an examination of the cases that have been before this Court, in which the marital rights of the husband were excluded, there was a clear intention, on the part of the maker, expressed in the deed. In the case of Hamilton vs. Bishop & Fly, 8 Yer., the language of the deed is, to the “use and benefit of the said Elizabeth and children, and to remain in the possession of said Elizabeth, for the use and support of said children forever.” These words control and limit the meaning of the expression before used — “I give to the said Elizabeth, and to the heirs of her body”' — so as to point out the particular purpose for which the property was given; and, in our view, equivalent to the words, “sole and separate use.”
In the case of Beufort Adams vs. Collier, 6 Hum., 488, the question was again before this Court, and the case was well considered. The Court say, in that case, if it clearly appeared it was the intention of the testator to exclude the marital rights of the husband, the Court will carry that intention into effect. The first bequest in the Will under consideration — in that case, the testator gave the negroes absolutely to the legatee. In the seventh clause, he added: “Fearing his sister might marry some man who would squander her property, he gave the negroes in trust to her brothers, William and James, for her and her heirs’ benefit.” In that case, the reason given by the testator for changing the form of the bequest, evinced the intention to exclude the marital rights of the husband.
*506 In the case in 5 Hum., p. 338, of Murphy vs. Neely et al., the language of the deed was, that “the trustee shall hold said property, for the use and benefit of the said. Thomas and Elizabeth Neely during their joint lives, and to suffer them to use and enjoy the same.” The language of the Court, in that case, is: “If the instrument had not mentioned the trustees at all, and had conveyed the property for the use and benefit of the wife, it would have inured, on well settled principles, to the benefit of the husband, and been liable for the satisfaction of his debts.” In 2 Story’s Equity, p. 1380, it is stated, as a settled principle: “A gift or bequest to a married woman, for her own use and benefit, there is nothing inconsistent with its being held subject to the marital rights of the husband.”
In the deed now under consideration, we are of the opinion, there is nothing in the deed which shows an intention, on the part of the donor, to give the donee an estate excluding the marital rights of the husband; and we are of opinion, the rights of the husband at-taehed, and the property was liable to seizure and sale by his creditors.
It is insisted, if the rights of the husband attached to the property vested in the first husband, Wm. Irwin, and passed to his administrator, it does not clearly appear at what time Irwin died. His administrator left the country, and made no effort to take the property in possession. Defendant, Smith, in his answer, affirms the deed was made after the death of Irwin. It does not appear he owed debts. The negroes remained in the possession of the widow for more than three years, *507 she claiming the property in her own right, the administrator setting up no title; and passing into the hands of the husband, after marriage, vested in him the title for life, to the slaves. Smith, the purchaser of the slaves, Frank, Berry and Polk,- had notice that the children of complainant had a remainder interest in these slaves; and he, in removing them from the State, became liable for the value of the remainder interest of the complainants. It was an appropriation of the property of the complainants in remainder, and for the value of the remainder interest, he must he charged: Story on Bailments, p. 100.
It appears, from the pleadings and cross hill of Daniel Smith, he conveyed to complainants, in part consideration, a tract of land of two hundred acres, the remainder interest of which is in them, in part payment for the purchase of the negroes, Frank, Berry and Polk— those he had purchased of Chrisman - and wife. The title of the remainder interest in the two hundred acres being in them, it would he inequitable to prevent them to recover the value of the remainder interest in the three slaves, Frank, Berry and Polk, and not account for the value of the remainder interest in the land.
The cause will be remanded to the Chancery Court, where an account will he taken. ‘ The defendant, Smith, will be charged with the value of the remainder interest at the date of the sale, and credited with the value of the remainder interest of the land at the date of deed. The decree of the Court, in all other matters, will he affirmed.